UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

SALAHUDDIN F. SMART,

    Plaintiff,

    v.

THE DEPT. OF CORRECTIONS FOR
QUEEN ANNE'S COUNTY,
ARAMARK, INC.,
C.P.O. MEARS and
DIRECTOR/WARDEN LAMONTE E.
COOKE,

    Defendants.

Civil Action No. TDC-17-3606

MEMORANDUM OPINION

Plaintiff Salahuddin Smart has filed a Complaint alleging that he was denied a kosher diet and, on one occasion, was denied a shower while he was a pretrial detainee at Queen Anne's County Detention Center in Centreville, Maryland. Defendants Director/Warden Lamonte E. Cooke, C.P.O. Mears, and the Department of Corrections for Queen Anne's County ("the DOC") (collectively, "the Correctional Defendants") have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Defendant Aramark, Inc. ("Aramark") has filed a Motion to Dismiss. Having reviewed the Complaint and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Correctional Defendants' Motion, construed as a Motion for Summary Judgment, and Aramark's Motion to Dismiss, will be granted.

## BACKGROUND

On November 22, 2017, while confined at Queen Anne's County Detention Center ("QACDC") as a pretrial detainee, Smart requested a kosher diet in accordance with his religious beliefs. Warden Cooke approved this request.

On November 27, 2017, Smart filed the instant Complaint in which he asserted that:

> Since my arrival each meal has not been kosher at all[;] in totality only the fruits have been kosher the meats are the same meats served to entire facility. Liquids as well. To disguise as kosher Aramark writes on containers kosher yet none of the meals since my confinement have met kosher requirements. Aramark could have . . . substituted by giving me a vegetarian diet yet it choose[s] to serve turkey, balon[e]y, salami, etc. . . . Th[e]n I'm ignored when I complain about this non[-] kosher diet & unknown meat.

Compl. at 6, ECF No. 1. Smart asserted that the lack of a genuine kosher diet caused him to go hungry and has deprived him of his constitutional rights. Smart's Complaint also alleged that "C.P.O. Mears refuse me a shower solely to discipline without any legal basis," though he provides no additional details about this incident. *Id.* Smart further claimed that he "wrote numerous grievance[s] and request form[s] to corroborate during discovery. Th[eir] failure to answer[] as stated in the . . . inmate handbook is telling!!" *Id.* (capitalization altered). Smart did not provide any details about these grievances. He requested monetary damages and injunctive relief in the form of kosher meals.

On November 28, 2017, the Warden issued a notice stating that "until the clearance for the kosher meal are approved we will treat all kosher meals as lacto vegetarian diet no meats." Aramark Mot. Dismiss Ex. 5, ECF No. 23-7. On November 29, 2017, Lavonne Carpenter, the Food Services Manager at QACDC and an employee of Aramark, placed an order with Single Source, a food service distribution company, for delivery of kosher meals and other food to QACDC. The food order was scheduled to arrive at QACDC on December 6, 2017.

At some point between December 1 and December 4, 2017, Smart submitted an Inmate Grievance/Complaint Form addressed to the Aramark Food Supplier Supervisor, but which was first reviewed by Warden Cooke on December 4, 2017. Smart's grievance provided the name and phone number of a rabbi and stated:

> Inquire whether your substitute for kosher amounts to kosher meals? Ask if the serving[s] are kosher since I've been approved of the special diet? Ask if your food serving outside fruit products, potatoes, bald eggs, amount to a kosher diet. I specifically told Warden have vegetarian diet meet kosher diet until you can receive kosher meal from New York State.

Aramark Mot. Dismiss Ex. 7, ECF No. 23-9. After reviewing the grievance, Warden Cooke contacted Carpenter on December 4, 2017. The grievance form states that Carpenter reported that kosher meals had been ordered and would be arriving later the same week. On December 20, 2017, Smart was transferred out of QACDC.

## DISCUSSION

In their Motion, the Correctional Defendants argue that the DOC is not an entity capable of being sued, that Smart has failed to allege facts demonstrating that Warden Cooke is liable for the alleged harms, and that Mears's act of denying Smart a shower on a single occasion does not rise to the level of a constitutional violation. In its Motion, Aramark seeks dismissal of the claims against it on the grounds that Smart's claim is moot because he has been transferred to another facility, that his claim fails because Aramark is not a state actor, and that Smart failed to exhaust administrative remedies before filing suit. Although notified of his right to respond, Smart did not file a memorandum in opposition to either Motion.

## I.    Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S.

3

662, 678 (2009).  A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Defendants have submitted numerous exhibits with their Motions.  Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any documents attached to the complaint or the motion if they are "integral to the complaint" and authentic. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Court deems Smart's Inmate Grievance/Complaint Form, attached to Aramark's Motion, to meet this standard and will consider it in resolving that Motion.

Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded.  Fed. R. Civ. P. 12(d).  Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.* "Reasonable opportunity" has two requirements:  (1) the nonmoving party must have some indication that the court is treating the 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion.  *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

4

Here, the notice requirement has been satisfied by the title of the Correctional Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Where Smart has not done so, the Court will construe the Correctional Defendants' Motion as a motion for summary judgment.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.   Correctional Defendants

### A.   Department of Correction

The Correctional Defendants first argue that the DOC is not a proper defendant in a lawsuit. The DOC is an agency of Queen Anne's County, Maryland ("the County"). Even if the DOC is not a proper defendant, where Smart requested an opportunity to correct the Complaint if he named

the wrong defendant, the Court will consider whether Smart has alleged a plausible claim against the County.

Upon such a review, the Court concludes that Smart has not alleged sufficient facts supporting a claim against the County. A local government such as a county "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Here, the Complaint acknowledges that the County has a written policy requiring the availability of kosher meals. Although he asserts that there was no policy in place to fulfill that requirement, his allegations focus on Aramark's lack of a policy to substitute vegetarian meals until kosher meals have been approved and are available. Moreover, Smart identifies no other instances of detainees failing to receive proper kosher meals to support his claim that his alleged deprivation was the result of an actual custom or policy rather than an isolated instance. Where Smart has not asserted a proper *Monell* claim against the County, the Court will dismiss the DOC as a defendant.

**B.    Cooke**

The Correctional Defendants also seek dismissal of the claims against Warden Cooke because Smart has failed to state a plausible claim against him. In the Complaint, Smart acknowledges that Warden Cooke "approved a special kosher diet" for him but states that he is suing Cooke "in his individual capacity for to inact [sic] a substitute for special kosher diet until Aramark gets approval." Compl. at 3, 6. In these allegations, Smart has failed to assert that Cooke was directly responsible for dispensing meals to Smart or that he had personal knowledge of the

6

fact that Smart was not receiving compliant meals prior to the filing of the Complaint. Notably, Warden Cooke did not receive the Inmate Grievance/Complaint Form until December 2017, *after* the Complaint was filed.

A state official may not be held liable under 42 U.S.C. § 1983 unless it is "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th. Cir. 1977); *see also Monell*, 436 U.S. at 690-92. There is no vicarious liability pursuant to the doctrine of *respondeat superior* in § 1983 cases against government officials for the acts of their subordinates. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Vinnedge*, 550 F.2d at 928. In order for a supervising official to be held liable under § 1983, a plaintiff must establish that: (1) the supervisor knew that a subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; (2) the supervisor's "response showed deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there was "an affirmative causal link" between the supervisor's "inaction and the constitutional injury." *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

Where Smart has not alleged that Warden Cooke was aware of the lack of kosher meals before the Complaint was filed, and in fact the record shows that he did not receive such notice until after the Complaint was filed, Smart has not stated a plausible claim for relief against Warden Cooke. The Motion will be granted as to Warden Cooke.

7

### C.    Mears

The Correctional Defendants seek dismissal of the claim against Mears argues on the grounds that even if he deprived Smart of a shower on a single occasion, such an action would not establish a violation of Smart's constitutional rights.  Because Smart was a pretrial detainee during the events in question, his claims are "governed by the due process clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).  A pretrial detainee's due process rights relating to conditions of confinement are "at least as great as the [E]ighth [A]mendment protections available to [a] convicted prisoner." *Id.*  "[W]hile the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of punishment." *Id.*  However, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.*

In the Complaint, Smart alleges that his request for a shower was refused on a single occasion.  Such an incident, even if not justified, does not constitute a violation of Smart's constitutional rights, particularly where Smart has not alleged that this single denial resulted in any actual harm or injury. *Cf. Shakka v. Smith*, 71 F.3d 162, 168 (4th Cir. 1995) (holding that denying a prisoner a shower for three days after the prisoner had had human feces thrown on him did not violate the Eighth Amendment).  Accordingly, the Motion will be granted as to Mears.

### III.    Aramark

Aramark's first two grounds for dismissal are unconvincing.  Although Aramark asserts that the case is moot because Smart has since been transferred to another facility, Smart's claim for damages precludes such a finding.  Likewise, Aramark's claim that it is not a state actor subject

8

to suit pursuant to 42 U.S.C. § 1983 for constitutional violations lacks merit. Although a claim under § 1983 requires action or inaction by a party acting "under color of state law," 42 U.S.C. § 1983, a private company may be held liable under § 1983 "when the state has delegated a traditionally and exclusively public function to a private actor." *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999). Because providing food service at a prison or jail is a traditional government function, a private company such as Aramark which is under contract to provide such a necessity to detainees or inmates can be deemed a state actor. *See e.g.*, *Coleman v. Aramark*, 31. F. App'x 808, 809 (4th. Cir. 2002) (assuming without deciding that Aramark acted under color of state law for purposes of § 1983 by "performing the traditional governmental function of providing food service at the Jail"); *Mozden v. Helder*, No. 5:13-cv-5160, 2014 WL 2986711, *2 (W.D. Ark. July 2, 2014) (collecting cases holding that prison food service providers are state actors because "the food service provider has assumed the state's constitutional obligation to provide a nutritionally adequate diet to inmates").

However, Aramark is correct that Smart's claim fails because he did not exhaust administrative remedies before filing suit. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

9

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859-60.

Although the United States Court of Appeals for the Fourth Circuit has not decided the issue, the weight of circuit authority establishes that the administrative process must be fully completed before the complaint is filed, and that completing the administrative process while the suit is pending but prior to entry of judgment does not prevent dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds) (holding that inmates must exhaust before filing suit); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (same); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534-35 (7th Cir. 1999) (same); *see also Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624 (D. Md. 2015) ("Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies."). *But see Williams v. Norris*, 176 F.3d 1089, 1090 (8th Cir. 1999) (per curiam) (reversing the district court's dismissal because the prisoner's grievance had been denied "at the time the court ruled").

10

Here, Smart filed his Complaint in this Court on November 27, 2017. *See Houston v Lack*, 487 U.S. 266, 276 (1998) (finding that a *pro se* inmate's submission is filed at the time it is delivered to the prison authorities for mailing to the court). Although it is unclear precisely when Smart's Inmate Grievance/Complaint Form was submitted, Warden Cooke responded to it on December 4, 2017, one week *after* the Complaint was filed. Aramark Mot. Dismiss Ex. 7. Thus, even without knowing if Smart appealed the Warden's response through all available levels of review and, if so, when such a process was completed, Smart plainly did not exhaust all administrative remedies before filing suit because he filed his Complaint before he received even an initial response to his first-level grievance. Smart has not alleged that any of the *Ross* factors are applicable here. Accordingly, Smart's claim against Aramark must be dismissed under the PLRA for failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, the Correctional Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, and Aramark's Motion to Dismiss, will be granted. A separate Order shall issue.


Date:  August 19, 2019

THEODORE D. CHUANG
United States District Judge

11